IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

STEVEN BAKER,                      )
                                   )
            Plaintiff,             )
                                   )
v.                                 )    Case No. CIV-07-138-RAW
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social             )
Security Administration,           )
                                   )
            Defendant.             )

**REPORT AND RECOMMENDATION**

Plaintiff Steven Baker ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence"

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on May 7, 1974 and was 31 years old at the time of the ALJ's decision. Claimant completed his education through the ninth grade. Claimant has worked in the past as a painter and worked on and built machinery. Claimant alleges an inability to work beginning October 27, 2003, due to an injury to his lower back, seizure disorder, and anxiety.

## Procedural History

On December 17, 2003, Claimant filed for disability insurance benefits and Supplemental Security Income under Title II (42 U.S.C. § 401, et seq.) and Title XVI of the Social Security Act (42 U.S.C. § 1381, et seq.). Claimant's application was denied initially and

upon reconsideration. On December 2, 2005, a hearing was held before ALJ Diego Kuchulis in Hugo, Oklahoma. However, for reasons not explained in the record, ALJ Kuchulis was unable to complete the decision. As a result, a decision dated October 4, 2006 was rendered by ALJ Lantz McClain based upon a review of the record and the hearing recording. ALJ McClain found no supplemental hearing was necessary. In his decision, the ALJ found that Claimant was not disabled during the relevant period and denied Claimant's request for benefits. On March 29, 2007, the Appeals Council denied review of the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step two, three, four, and five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work existing in a significant number of jobs in the national economy.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to find Claimant's anxiety and back problems constituted a severe impairment; (2) failing to find Claimant met a listing; (3) failing to accord substantial weight to the opinions of Claimant's treating

4

physicians; and (4) finding Claimant retained the RFC to perform a full range of sedentary work and by applying the medical vocational guidelines.

**Claimant's Severe Impairments**

Claimant contends the ALJ inappropriately failed to find his anxiety and back problems as severe impairments. In regard to Claimant's anxiety condition, the ALJ found Claimant was taking Xanex

> which is prescribed by his treating physician, Dr. Brown. However, Dr. Brown does not give a diagnosis of anxiety. Further, the claimant states that he is only anxious about having seizures and is paranoid about having them in public and about hurting himself or someone else. He has never been hospitalized for anxiety or depression.

(Tr. 16).

The ALJ apparently derives this information from the Psychiatric Review Technique form completed by the consultative professional, Hannah B. Swallow, Ph.D. on August 19, 2004. Dr. Swallow determined Claimant suffered from "[a] persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity, or situation." (Tr. 204). Dr. Swallow found Claimant suffered from Anxiety NOS, by history. *Id.* Dr. Swallow then found Claimant was prescribed Xanex by his treating physician, "Dr. Brown" and that "Dr. Brown" does not give a diagnosis. (Tr. 211). Both parties agree that Claimant was never seen or treated by a Dr. Brown and

5

that no medical records exist to reflect any such physician. Defendant labels the error as a "typographical mistake" and attributes the error to the inability of the ALJ who presided over the hearing to complete the decision. ALJ McClain wrote and rendered the decision regurgitating the improper name of Claimant's treating physician from a DDS report. At the very least, the use of the name of a physician in the opinion who never attended Claimant gives this Court some pause as to whether the ALJ fully reviewed the record in the compilation of his decision.

It is clear from the record that it was, in fact, Dr. Sean Boone who prescribed Xanex to Claimant. Both the DDS and the ALJ come to the conclusion that "Dr. Brown" (Dr. Boone) failed to diagnose Claimant with anxiety. The record reveals Dr. Boone made such a diagnosis. (Tr. 139). Given this error in evaluating the record, the matter must be remanded for a review of the severity of Claimant's anxiety and the impact of that anxiety upon Claimant's ability to work.

Claimant also contends he suffers from a severe back condition. On September 9, 2001, Claimant reported to McCurtain Memorial Hospital complaining of low back pain. He was diagnosed with an acute myofascial strain to his lumbar back and prescribed pain medication. (Tr. 107). On February 15, November 20, and December 6 of 2000, Claimant was attended by Dr. Pabilona for back pain. However, x-rays and thoracic spines were negative. (Tr. 120-121).

On April 29, 2003 and May 22, 2003, Claimant saw Dr. Boone, complaining of back pain. He was diagnosed with a thoracic strain and prescribed pain medication on both occasions. (Tr. 140-141, 128-129).

On April 20, 2004, Claimant underwent an MRI of his lumbar back. However, it returned unremarkable. (Tr. 168). On April 24, 2004, Claimant underwent an MRI of his thoracic spine. It, too, resulted in a negative examination. (Tr. 167).

On April 20, 2004, Claimant was attended by Dr. Patrick Fahey. He found Claimant's condition unchanged since his last examination. (Tr. 195).

On July 21, 2004, Claimant was seen by Dr. Larry Lovelace. Dr. Lovelace found Claimant suffered from "[n]o muscle aches or skeletal pain." He also stated Claimant had an "[i]ntact neurologic examination without focal deficits." (Tr. 187).

Dr. Fahey examined Claimant on June 30, 2004 and found "[t]here is continued lumbosacral paraspinal myotomal tenderness. He has provoked pain with provocative testing about axial spine, however, with negative lumbosacral impingement findings or straight leg raising." Dr. Fahey also found no synovitis, sinovial thickening, or effusions, with no clubbing, cyanosis, or edema. His examination revealed Claimant's DTRs' are symmetrically intact for upper and lower extremities with no evidence of pathologic reflexes and negative clonus. (Tr. 194).

7

In a September 22, 2004 examination by Dr. William Herron, Claimant's cranial nerves were found to be intact, he had intact sensation, his motor examination was full at 5/5, his reflexes were all 2+, he had normal coordination and a normal gait, he could walk on his toes and heels, and he could hop on his toes. (Tr. 216).

Dr. Fahey examined Claimant on September 27, 2005 and found Claimant had a normal tandem gait, no edema, cyanosis or clubbing, no synovial thickening, no bony pain but did suffer provoked pain in certain ranges of motion. He diagnosed Claimant with thoracic and lumbosacral spinal strain. (Tr. 225-226). He also found Claimant was unable to sit, stand, or walk for greater than 30 minutes at one time. He also determined Claimant could not sit, stand, or walk for greater than one hour in an eight hour day for each activity. Dr. Fahey found Claimant could only lift and carry 0-5 pounds infrequently and could never lift or carry over 6-10 pounds. He also restricted Claimant from being able to utilize his upper extremities for repetitive motion or movement including but not limited to grasping, gripping, pushing, or pulling. (Tr. 226).

In his decision, the ALJ found Claimant's back injury to not be severe. He determined his thoracic and lumbar spine MRI was negative and that the strain in Claimant's back had a "minimal effect" upon his ability to work. (Tr. 16).

Claimant first contends his back condition is a severe impairment. In step two of the sequential evaluation process, the

8

claimant bears the burden of making "a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities." Williams v. Bowen, 844 F.2d 748, 752 (10th Cir. 1988). The step two determination is based on medical factors alone. Id. at 750. The claimant must make a "de minimis showing of medical severity" or the evaluation process ends, and benefits are denied. Id. at 751.

At best, Claimant has demonstrated through the objective medical evidence that he suffered a strain that continued to cause pain. No medical testing indicates that the condition is debilitating to his ability to work or is a permanent condition. Claimant has failed to make the de minimus showing of severity on this condition.

### Claimant's Seizure Condition

Claimant next contends his seizure condition satisfied a listing and that the ALJ erred in finding to the contrary. Claimant suffers from periodic grand mal seizures which the ALJ found constituted a severe impairment. The ALJ determined that no treating or examining physician provided the necessary findings to establish Claimant's severe impairment meets a listing. Further, the ALJ found Claimant's attorney never alleged any of Claimant's conditions met a listing.

Claimant now asserts the ALJ failed to make the necessary findings to exclude his severe impairments as meeting a listing.

9

Defendant contends the medical evidence demonstrates Claimant does not experience seizures with sufficient frequency and regularity to qualify under the applicable listing. Defendant is correct concerning the medical evidence. Unfortunately, the ALJ failed to make the same findings in his decision. Defendant cannot make post hoc arguments as to why the ALJ might have rejected a particular opinion. The ALJ must make the findings in his decision. Franz v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007). While this deficiency may be easily corrected upon remand to the ALJ, it must be corrected nonetheless.

**Treating Physician's Opinion**

Claimant next contends the ALJ failed to properly consider the opinions of Dr. Fahey, a treating physician in regard to the restrictions upon Claimant's ability to work, as previously cited in this opinion. The ALJ found that he considered Dr. Fahey's opinions carefully but found no little objective medical evidence to support Dr. Fahey's weight and performance restrictions. (Tr. 18-19).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in

the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely,

he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ recited extensively from Dr. Fahey's report. While he apparently did not afford Dr. Fahey's restriction opinions controlling weight, he did consider the opinions and found no supporting evidence for those conclusions. This Court must agree. Dr. Fahey's restrictions appear to find no basis in the repeated findings of lumbar strain he makes in his own medical assessments. Moreover, this Court must agree with the ALJ that Dr. Fahey appears to only consider these restrictions, and the medical condition which cause the restrictions, as temporary and not permanent which would affect his ability to work. The ALJ gave specific, legitimate reasons for his rejection of Dr. Fahey's restriction opinion and the decision is supported by substantial evidence.

### RFC Evaluation

Claimant contends the ALJ erred in finding he could perform a full range of sedentary work due to his seizure disorder. As Defendant indicates, the ALJ in fact found Claimant could only perform certain specific jobs classified as sedentary work, including gate guard, hardware sales clerk, and assignment clerk. (Tr. 21). The ALJ based these findings upon the testimony of the vocational expert at the hearing conducted in this matter. Based upon the ALJ's finding that Claimant only suffered from seizure disorder as a severe impairment, the ALJ's RFC was not erroneous.

12

It is supported by the medical evidence present in the record. As previously stated, the ALJ did not commit error in rejecting the restrictions imposed by Dr. Fahey and, contrary to Claimant's arguments now, in declining to consider those restrictions in arriving at the stated RFC. If on remand, however, the ALJ should determine Claimant's anxiety condition also constitutes a severe impairment, he should re-evaluate his RFC determination.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and REMANDED** for further proceedings.

The parties are herewith given ten (10) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of July, 2008.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

13